UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY PERCIVAL, | CASE NO. 1:09-cv-01699-MJS (PC) |
| Plaintiff, | FIRST AMENDED COMPLAINT DISMISSED WITH LEAVE TO AMEND |
| v. | (ECF No. 17) |
| J. CLARK KELSO, | SECOND AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |
| Defendants. | |

**SCREENING ORDER**

**I.     PROCEDURAL HISTORY**

Plaintiff Larry Percival ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff consented to Magistrate Judge jurisdiction on November 19, 2010. (ECF No. 13.)

Plaintiff filed his original complaint September 28, 2009. (ECF No. 1.) He was given leave to amend and did so on December 23, 2010. (ECF Nos. 16 & 17.) Plaintiff's First Amended Complaint is now before the Court for screening. For the reasons set forth

1

below, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted.

## II.  SCREENING REQUIREMENTS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 129 S.Ct. at 1949.

## III. SUMMARY OF COMPLAINT

Plaintiff alleges violations of his First and Eighth Amendment rights. He names the following individuals as Defendants: J. Clark Kelso, Federal Receiver; R. Fisher, Captain; T. Akin, Lieutenant; S. Nail, Sergeant; R. Garza, Correctional Officer; Anthony Enenemoh, Chief Medical Officer; Rahimi, Doctor; Landsford Peters, Physician's Assistant; Jean-Pierre, Physician's Assistant; A. Wycoff, Licensed Psychiatric Technician; James Yates, Warden; Jim Mattingly, Chief Deputy Warden; Felix Igbinosa, Chief Medical Officer; Donald R. Hanson, Associate Warden Inmate Medical Services; William F. Alvarez, Healthcare Manager; and J. Does 1 through 10.

Plaintiff alleges the following:

### A. Count One - Retaliation

On November 6, 2009, Plaintiff watched as Defendant Nail physically assaulted a handcuffed and wheelchair-bound inmate. Afterwards, Defendant Nail told Plaintiff not to tell anyone or he would "have [Plaintiff] shot for assaulting staff." (ECF No. 17, p. 6; Pl.'s Compl. p. 3.) On November 11, 2009, Plaintiff wrote a letter to the Director of Corrections describing Defendant Nail's threats and explaining that Plaintiff feared for his safety. Plaintiff was interviewed by Defendant Akin about the letter. In Plaintiff's absence, Defendants Nail and Garza searched Plaintiff's cell and claim to have found a razor blade. Plaintiff was given a CDCR 115 rule violation. He was found guilty, lost one year of good-time credit, and was given a ten month term in the Security Housing Unit ("SHU").

### B. Count Two - Medical Care

Plaintiff has constant pain from a bullet lodged in his pelvic region, a pinched nerve,

3

fused joints, and degenerative disc/joint disease in his lower spine and pelvis. On August 25, 2008, a pain management doctor saw Plaintiff and recommended nerve blocks and pain medications. Another doctor at the prison ordered the shots and medication. Plaintiff was placed on morphine, but did not receive the nerve blocks.

On November 3, 2008, Plaintiff was placed in administrative segregation ("ad-seg") and all pain management treatment ceased. Defendant Jean-Pierre cancelled the shots. Plaintiff filed numerous 602 grievances requesting treatment. All were denied. Defendants Jean-Pierre and Peters refused to prescribe Plaintiff anything except morphine for his pain. Plaintiff became physically addicted to morphine, and built up tolerance to it. Defendants Jean-Pierre and Peters prescribed only morphine sulfate instant release which lasted only a few hours. Plaintiff's repeatedly requested morphine sulfate extended release. In response to denials of his requests, he filed numerous 602 grievances. They were screened out with the explanation that 602 forms were not for sick calls. Plaintiff filed numerous 602s requesting to be seen by a doctor instead of a physician's assistant. All were denied because inmates were not permitted to select a particular doctor. Plaintiff wrote to Defendant Enenemoh who repeatedly refused to provide relief to Plaintiff.

On January 6, 2009, Plaintiff was accused of giving or selling his morphine tablet to another prisoner based on the fact Plaintiff was the only inmate in ad-seg receiving morphine at the time. Defendant Wycoff had Defendant Rahimi discontinue Plaintiff's morphine entirely. Plaintiff went through withdrawals and, on January 9, 2009, fell and was in such pain that he could not walk. He was taken to the Correctional Treatment Center and given a shot, but no examination was conducted. For the next several weeks, Plaintiff could not walk or stand on his right leg because of pain. Defendant Peters refused to

modify Plaintiff's medication or issue him a wheelchair until Plaintiff was seen by a specialist.

On February 27, 2009, Defendant Peters placed a request for Plaintiff to see an orthopedic specialist. As of the time of filing of this Complaint, six months had passed without Plaintiff having been seen by the specialist. Plaintiff has filed numerous 602s which have been screened out.

### C.  Count Three - Valley Fever Exposure

In February 2006, Plaintiff was transferred to Pleasant Valley State Prison ("PVSP") where he contracted Valley Fever. Plaintiff did not receive any warning or information regarding the risks of contracting Valley Fever at PVSP.

### D.  Remedy Request

As a remedy for all three counts, Plaintiff seeks compensatory and punitive damages, removal of a rules violation from his file, and return of the 365 days of good time credit.

## IV.  ANALYSIS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

A. **Rule 18(a)**

Plaintiff asserts three causes of action: (1) a retaliation claim against Defendants Kelso, Fisher, Nail, Akin, and Garza; (2) medical care claims against Defendants Jean-Pierre, Peters, Enenomeh, Wycoff, Rahimi, and Does 1 through 10; and (3) a Valley Fever claim against Yates, Mattingly, Igbinosa, Hanson, and Alvarez. Counts One and Two occurred while Plaintiff was housed at the California Substance Abuse Treatment Facility at Corcoran. Count Three arises out of Plaintiff's placement at PVSP.

The Court will not allow Plaintiff to pursue these three unrelated claims in one action. As one court has held:

> The controlling principle appears in Fed. R. Civ. P. 18(a): A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party. Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). The Court will analyze each of Plaintiff's three claims below. However, if Plaintiff is given leave to and chooses to file a second amended complaint, he may assert only one of the claims here. If he wishes to pursue other claims, he must file a separate action and pay a separate filing fee for each.

B. **Count One - First Amendment Retaliatory Conduct**

Plaintiff alleges that Defendants Kelso, Fisher, Akin, Nail, and Garza violated his First Amendment rights through retaliatory conduct.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff satisfies the first criteria. The planting of contraband followed by punishemnt for having contraband, if true, are adverse actions.

Plaintiff states that Defendant Nail threatened him after Plaintiff saw Nail assaulting another inmate. Plaintiff apparently wrote and complained about feeling threatened. When he was being interviewed by Defendant Akin about his complaint, Nail and Garza planted a razor blade in his cell. Plaintiff does not disclose the content of his complaint other than to say he felt threatened and feared for his safety. He does not state that he specifically complained about Defendant Nail or that Nail knew about Plaintiff's letter or the interview. Thus, as to the third prong of the retaliation test, it not perfectly clear what First Amendment-protected action Plaintiff was attempting to perform. Assuming Plaintiff means to allege the letter was perceived as a grievance against Defendant Nail, it could be protected under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). With that assumption, Plaintiff has satisfied the third prong of the retaliation standard.

The second element of a prisoner retaliation claim focuses on causation and motive.

7

See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Morgan, 874 F.2d at 1314). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent"). The timing of the search—in that it occurred while Plaintiff was being interviewed regarding the letter—and the finding, or planting according to Plaintiff, of the razor is suspect. Nevertheless, Plaintiff has not alleged facts demonstrating that the named Defendants knew about and were retaliating because of the letter or the interview. Plaintiff has not stated adequate facts to satisfy the second prong of his retaliation claim.

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300). Plaintiff has alleged facts sufficient to satisfy the fourth prong. Having evidence planted in one's cell and being sentenced to ten months in the SHU would discourage a person of ordinary firmness from exercising his First Amendment rights.

With respect to the fifth criteria, a prisoner must affirmatively allege that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. This is not a high burden to reach. See id. (prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry). Plaintiff makes no statements regarding penological goals or whether the allegedly racts were related to such goals. However, the Court can conceive of no circumstance in which the planting of contraband and subsequent punishment for its possession would advance a legitimate goal. Thus, the Court finds that Plaintiff has satisfied the fifth prong of his retaliation claim.

Because Plaintiff has failed to allege sufficient facts to satisfy all five requirements of his retaliation claim, he has failed to state a claim upon which relief could be granted. The Court will grant Plaintiff leave to amend this claim and attempt to set forth sufficient facts to state such a claim. In his amendment, Plaintiff should describe in greater detail what led to the retaliatory conduct and how he ties the conduct to his complaint.

Further, it does not appear from the statement of the facts that Defendant Akin acted in a way that violated Plaintiff's First Amendment rights, and Defendants Kelso and Fisher are not mentioned at all in his statement of Count One. If Plaintiff chooses to pursue this count in his amended complaint, he must specify how each named Defendants personally participated in the retaliation.

### C. Count Two - Eighth Amendment Medical Care

Plaintiff alleges that Defendants Rahimi, Peters, Jean-Pierre, Wycoff, and Does 1 through 10 violated the Eighth Amendment by failing to provide adequate medical care, i.e., pain management.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060). In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106;

10

see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974 F.2d at 1050, overruled on other grounds, WMX, 104 F.3d at 1136. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff has failed to state a claim for inadequate medical care. It appears that Plaintiff and perhaps even one or more of the doctors who have seen him disagree primarily with the method of pain management provided by the prison. He was given short-lasting mophine; he wanted long-lasting. He was given only morphine; he wanted a nerve block. He wanted a wheelchair; none was given. Plaintiff does not state that the chosen course of treatment was medically unacceptable under the circumstances and in the setting in which it was prescribed, but only that other treatment would have been better for him. Such disagreement does not state a cognizable medical care claim. See Sanchez, 891 F.2d at 242.

Plaintiff states that Defendant Wycoff told Defendant Rahimi to discontinue

11

Plaintiff's pain medication after Plaintiff was accused of selling or giving his pain medication to another inmate. In a prison setting, the decision to discontinue a pain medication because of concerns of abuse of such medication does not amount to deliberate indifference to serious medical needs. See Atakpu v. Lawson, 2008 WL 5233467, *11 (S.D. Ohio, Dec. 11, 2008 ); Johnson v. Herman, 2006 WL 1408389, *3 (N.D. Ind., May 18, 2006) ("An inmate who will not take his medication when it is dispensed does not appear to need the medication. This is particularly true for pain medication. Even if he is in pain as a result, he appears willing to suffer that pain in exchange for whatever benefit he receives by not immediately taking the medication."); Shea v. Wheeler, 2001 WL 34376846, *6 (W.D. Wis., June 19, 2001) (holding that prison doctor's decision to discontinue inmate's prescription for misuse, even after inmate was found not guilty at a subsequent disciplinary hearing, did not constitute deliberate indifference); Jones v. Ehlert, 704 F.Supp. 885, 888-90 (E.D. Wis. 1989) (no deliberate indifference found where prisoner's Valium was discontinued after sergeant at correctional institution accused prisoner of palming off medication).

Plaintiff complains that all pain medication was cancelled when he was assigned to ad-seg and he complains that he has not been seen by a specialist in over six months. He does not attribute responsibility for either action to a named Defendant. Plaintiff does not mention Does 1 through 10 at all in the statement of Count Two.

For all of these reasons, Plaintiff has failed to state a cognizable medical care claim. The Court will grant Plaintiff leave to amend this claim. However, if he chooses to proceed on this count, he must attribute each constitutional violation to a particular Defendant and satisfy the legal standards discussed above.

### D.     Count Three - Eighth Amendment Valley Fever

Plaintiff alleges that Defendants Yates, Mattingly, Igbinosa, Hanson, and Alvarez subjected him to cruel and usual punishment by placing him at PVSP and failing to inform him of the risk of contracting Valley Fever in violation of the Eighth Amendment.

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for the safety of inmates. See Farmer, 511 U.S. at 834.  A prison official violates the Eighth Amendment only when two requirements are met:  (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety.−  See id.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citation omitted).  "The inmate must then make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Patterson v. County of San Diego, 2010 WL 3957398 *3 (S.D. Cal., 2010) (quoting Farmer, 511 U.S. at 834).

To reach deliberate indifference, a plaintiff must show "that the official was aware of a risk to the inmate's health or safety and that the official deliberately disregarded the risk." Foster v. Runnels, 554 F.3d 807, 814 (9th Cir. 2009).  In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer, 511 U.S. at 837.

Plaintiff has failed to state a claim that his Eighth Amendment rights were violated when he was placed at PVSP without being informed of the risk of contracting Valley

13

Fever. He has not alleged that any named Defendant knew of the risk to Plaintiff nor that any Defendant was deliberately indifferent to that risk.

The Court will give Plaintiff leave to amend this claim in an attempt to state a constitutional violation. However, Plaintiff should note that the courts of this district have repeatedly found such claims to be insufficient. "[T]o the extent that Plaintiff is attempting to pursue an Eighth Amendment claim for the mere fact that he was confined in a location where Valley Fever spores existed which caused him to contract Valley Fever, he is advised that no courts have held that exposure to Valley Fever spores presents an excessive risk to inmate health." King v. Avenal State Prison, 2009 WL 546212, *4 (E.D. Cal., Mar. 4, 2009); see also Tholmer v. Yates, 2009 WL 174162, *3 (E.D. Cal., Jan. 26, 2009) ("To the extent Plaintiff seeks to raise an Eighth Amendment challenge to the general conditions of confinement at PVSP, Plaintiff fails to allege facts that indicate Defendants are responsible for the conditions of which Plaintiff complains," such as "acts or omissions of Defendants have caused an excessively high risk of contracting valley fever at PVSP"). Thus, Plaintiff would well-served devoting his effort to one of his other two claims.

### E.   Doe Defendants

Plaintiff lists as Defendants, J. Does 1 through 10. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). "It is permissible to use Doe defendant designations in a complaint to refer to defendants whose names are unknown to plaintiff. Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process until

14

they are identified by their real names." Robinett v. Correctional Training Facility, 2010 WL 2867696, *4 (N.D. Cal. July 20, 2010).

Plaintiff is advised that J. Does 1 through 10 can not be served by the United States Marshal until he has identified them as actual individuals and amended his complaint to substitute the Defendants' actual names. The burden remains on Plaintiff to promptly discover the full name of Does 1 through 10; the Court will not undertake to investigate the names and identities of unnamed defendants. Id. Plaintiff should investigate and attempt to discern the identity of the Doe Defendants before filing his amended complaint.

### F. Personal Participation and Supervisory Liability

Plaintiff's Complaint includes a list of Defendants several of whom are not named in the statement of the case, including: Kelso, Fisher, Yates, Mattingly, Igbinosa, Hanson, Alvarez, and Does 1 through 10. This leads the Court to assume that Plaintiff is arguing that these listed Defendants are liable for the conduct of subordinates as, according to Plaintiff's statement of facts, none of them were present and did not participate in any of the complained of conduct. In fact, the listed Defendants were not mentioned at all in the factual allegations that make up the three counts of Plaintiff's Complaint.

Under Section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for

his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F.Supp.2d 888, 892 (C.D.Cal. 2004). In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Jeffers, 267 F.3d at 915; Wesley, 333 F.Supp.2d at 892. The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights. Wesley, 333 F.Supp.2d at 892 (internal quotations omitted). However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement. Id. (internal quotations omitted).

Supervisor liability under Section 1983 is a form of direct liability. Munoz v. Kolender, 208 F.Supp.2d 1125, 1149 (S.D. Cal. 2002). Under direct liability, Plaintiff must show that Defendant breached a duty to him which was the proximate cause of his injury. Id. "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978)).

However, "where the applicable constitutional standard is deliberate indifference,

16

a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others." Star v. Baca, 2011 WL 477094, *4 (9th Cir. Feb. 11, 2011).

As the listed Defendants do not appear in the statement of the case, Plaintiff has utterly failed to allege that those Defendants personally acted to violate his rights. In his Amended Complaint, Plaintiff needs to specifically link each Defendant to a violation of his rights. Any named Defendant that cannot be personally linked to a constitutional violation should be left out of the amended complaint.

## V. CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any Section 1983 claims upon which relief may be granted. The Court will provide Plaintiff an opportunity to file an amended complaint to address the potentially correctable deficiencies noted above. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). As previously noted, because Plaintiff's claims involve different facts and different Defendants, he cannot pursue all three claims in this action. See Fed. R. Civ. P. 18(a). In his Amended Complaint, Plaintiff must choose one of the three claims to pursue. If he chooses to pursue the remaining two counts, he must do so in separate actions.

Plaintiff's amended complaint must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an

amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

2. Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:09-cv-1699-MJS (PC); and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   March 1, 2011                     /s/ *Michael J. Seng*
ci4d6                                      UNITED STATES MAGISTRATE JUDGE